## Fowler v. National Benefit Life Insurance Company.

(Decided October 21, 1924.)

### Appeal from Warren Circuit Court.

1. Insurance—Whether Weekly Premiums had been Paid Held for Jury.—In action on life policy, whether certain weekly premiums had been paid held for jury.
2. Insurance—Agent having Admitted Premiums were Paid, Company should Not be Permitted to Deny Liability After Death.—

Agent of insurance company having told insured's mother, prior
to death of insured, that she would owe four premiums (authoriz-
ing suspension of policy) at a future date, company should not
be permitted to deny liability for nonpayment of premiums after
death.

GUY H. HERDMAN and JOHN L. STOUT for appellant.

RODES & HARLIN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Reversing.

Minnie Fowler, a colored woman, the mother of three
daughters lived at Bowling Green, and the National Bene-
fit Life Insurance Company is a corporation, engaged
in writing life policies among colored people in that city
and elsewhere. Each of the three daughters of appellant
Fowler carried a policy with appellant company. They
were taken out some two years or more before the death
of Nancy, the insured named in the policy which is the
subject of this litigation. The principal sum was $500.00.
and the premium payable each week was twenty-four
(24c) cents. The policy contained a clause providing
it should be unenforceable if the insured allowed the
weekly premium to become four. (4) Mondays in arrears.
It was further provided in the contract that in case a
policyholder became four Mondays in arrears he could
be reinstated only by paying the premiums and comply-
ing with certain other named conditions, the policy being
suspended during the interval.

Nancy Fowler, the insured, died March 23, 1922.
Her mother, Minnie Fowler, was named in the policy
as beneficiary. She offered proof of death of her
daughter but the company denied liability on the ground
that the policy had lapsed through the nonpayment of
the weekly dues. The court instructed the jury, at the
conclusion of the evidence, to find and return a verdict
for the company. Complaining of this Minnie Fowler
prosecutes this appeal.

The policy was issued June 7, 1920, and the premiums
paid. A regular collector called at the house weekly,
generally on Monday. Sometimes Mrs. Fowler, who al-
ways paid the premiums for her daughters, would not
pay weekly and later would pay sums sufficiently large
to cover several premiums. Several times during the ex-
istence of the policy the premiums were more than four

Mondays in arrears, and according to the terms of the policy the company could have elected to cancel it, but there is no evidence that any such action was taken by the company at any time previous to the day of the death of Nancy Fowler. It is the contention of the mother that there were only 83 Monday premiums of twenty-four (24c) cents each maturing during the life of the policy up to the time of the death of the insured, and that during that time she paid 80 premiums and in addition paid a lump sum of five dollars ($5.00) on premiums for which she received no credit, thus carrying the premiums well beyond the date of the death of Nancy, the insured.

The company admits that the mother paid 79 premiums on the policy but insists she was four Mondays and three days in arrears with dues at the time of the death of Nancy. With the evidence is filed a "card book," or "premium receipt book," issued by the company to Nancy Fowler on which is shown the various payments of premiums made by the mother. One premium was not credited on the book, so appellant says, nor was there any record made of the payment of the $5.00 which the mother testified she gave the agents of the company as premiums on the three policies of her daughters.

As the only fact at issue was, whether 80 premiums had been paid, as contended by the mother, or only 79 had been paid, as contended by the company, we think the evidence for appellant, Minnie Fowler, was amply sufficient to carry the case to the jury, for, if the jury found her evidence to be true it would necessarily have found that she had paid 80 premiums, which would have kept the policy in full force and effect up to the time of the death of the insured. There are many other bits of evidence in the transcript which tend to support appellant's contention that the dues were paid. For instance, the mother testified that on Monday, the 20th of March, three days before the death of the insured, the agent of the company called to collect dues and that she paid him 67 cents. That was one week's dues on each of the three policies held by her daughters. As the agent was leaving she asked him how the books stood, and he answered: "You will owe me four weeks next Monday," to which she replied, "Come back and I will pay you for two weeks; Mrs. Hahn pays me and I will pay you." The next Monday would have been March 27th, but the daughter died on the 23rd. If her testimony be true,

then the company should not be permitted, after the death of the policyholder, to deny liability, having acknowledged its liability on the policy when the insured was in good health, and only three days before her death, for, as shown by the conversation, the mother was anxious to keep the premiums paid up and the policies in force, and insisted that the agent return and receive the dues.

Another premium was paid on March 23rd, the morning of the day on which the daughter died. This was sent to the office, and the company insists that when it received the payment it issued and attached to the "premium receipt book" a short printed recepit for the premium, which paper shows the holder of the policy was in arrears for dues and that the policy was suspended until the premiums were paid up, in accordance with the terms of the policy. The mother insists that this receipt was not with the book when it was brought to the house, nor with it at any time; that no such receipt or notice had ever been received by her or any of the family. She states that on the death of her daughter she turned the book and policy over to the agent of the company and he carried it away for the purpose of making proof of the death and collecting the money on the policy; that later the company claimed that it had issued such a suspension receipt. She also offered to prove that the agent of the company stated in the presence and hearing of the company's manager that no such suspension receipt had been issued at the time of the payment for the reason that the girl in the office did not know how to make out such a receipt. The mother's explanation of how the premium was sent to the office on the day of the daughter's death were evidentiary facts that should have been submitted to the jury on the whole case. The old colored woman was illiterate and could not read or write. She could only identify the receipt book by a greasy spot on it.

We think the evidence of plaintiff was entirely sufficient to carry the case to the jury and the trial court erred to the prejudice of appellant in directing the jury to find and return a verdict for the company.

Judgment reversed for new trial consistent with this opinion.